If I may proceed. You may. Good afternoon, and may it please the Court, if the Court prefers, if I would be allowed to reserve two minutes, if that would be allowable by the Court. The case before you is a fairly simple case involving two matters that are consolidated, both of them from orders coming from the district court in Arizona. One is from the middle of 2016. One is from the fall of 2016. But while they involve different people, they involve the same defendant, and as I'll explain, they involve the same pattern and practice of conduct by the defendant that led them to file suit. Both individuals, whether we're dealing with Philip and Tanya Mann, who live in Philadelphia, or Sergey Selyaev, who lives in Las Vegas, we have individuals who had come into information in regard to Swiss-America and the products that they sell. So what would happen is, in both situations, and it's set forth within their affidavit testimony, they would be — they would hear information and they would follow up as to what they could do to capitalize on, frankly, what was advertised as a clear investment opportunity. In both situations, what would happen is there would be a certain amount of products that they would buy, for instance, with the Manns. They originally bought silver coins and bagged silver. And these are fairly pedestrian investments. And then they would be counseled by the representatives at Swiss-America into buying things that involve collectible or numismatic coins. Now, I want to be very clear. There are, and I'll admit I'm not an expert in coins, but there is a clear distinction, Your Honors, between the bullion and general gold coins and what's called collectible or numismatic. The first is that, in regard to the way that they were sold to these clients in this case, whenever you have the general coins or these general products, unlike numismatics, they may not be in your possession. These may be things that are held with the Treasury. And what happened in these cases was these individuals were told, these individuals were told, wait, there could be a downturn where, if we look back to the Roosevelt years of, for instance, 1933, then what happens is the court, or I'm sorry, Your Honors, the government may be allowed to take those materials. And what you can do to make sure those things don't happen is you can make an investment in numismatic coins. Now, that's one part, but there is more to it than that. In addition, it was told that these things could increase in value down the line. Now, there is a clear distinction in this case that I feel is the focal point, Your Honors, of this matter, and that is this. When we are dealing with fraud, and this was addressed by both Judge Silver and this was addressed by Judge Teelburg, when you are talking about a fraud case, there are two characteristics of statements that are not going to be allowed to be considered. Now, the first one is going to be where you have someone talking about future events. For instance, if you say, listen, this stock is going to appreciate in the future, if you say this is going to fall and this is the investment at this time, that's exactly what you are doing is a prognostication or a prediction. The other side is when you have an opinion. If you are just giving an opinion about what would happen, then that cannot be allowed for fraud. And I focused on fraud in the briefing, Your Honors, in both matters because of this. So what was the false representation? It was that when you go back and look at the historical situations, it's based on the history. It's whenever you have to go back and look at the fact that the government can come in and do these things as the basis for them doing it again in the future. It was creating a sense of fear, Your Honor, that here's a situation where – Was it a false representation as to past events? Yes, it was historical. And it was historical because it was something – and I think the case law is clear that it must relate to either – and I would like to, if I could, bring up the Arnold and Associates versus, I believe it's pronounced Mises Healthcare Systems, 275 FedSupp Second at 1013. It must relate to either a past or an existing fact. Right, but I'm saying as a matter of historical record, what was false about it? That's – okay. And I understand very well what the Court's asking is what was pointed to in the past in order to say you look at that and that is false. And what I'm saying is the way that that was used in the past was that it was saying that those were instances to show that because you could have things confiscated then that it could be confiscated now. In other words, what you're doing is they're basing their actions on something in the past, and that was very important because this is much, much different. We're not – So are you saying that if you base a representation on something accurate that happened in the past, that's a false representation? The point is well taken by the Court that you could point to something in the past and then you could very well say, okay, listen, that is something that actually happened, but it wasn't used in that regard. What it was used for, Your Honor, was to say that because of this, you need to fear this down the line based on something that historically did happen in the past. And that's why in this case – So why isn't that a prediction as to future events? Because – and if I misspoke, I apologize, Your Honor. It's a misstatement as to a future event because what you're doing is you are saying that you need to get into the type of coin that cannot be – which is a commemorative or a numismatic coin, Your Honor, that cannot be confiscated in the future because of what happened in the past. How does that differ, for example, from someone saying during the Great Depression these forces came together and the economy collapsed and we think the economy is in danger of collapsing again, which some stockbrokers say from time to time. What's different? If the court could – just so I understand, could the court repeat that? Right. In other words, you're using historical economic data, historical economic facts, such as some of the forces of the broader recession or the Great Depression, and a stockbroker says, you know, because of these facts, I think you should get into this stock because I see some of the same things happening again. Well, that's not actionable. So why is yours any different? When you are – and I think I can draw the distinction, Judge Thomas, is whenever you have something that you are using to say, if you look back at this performance, then based upon what happened there, we need to have that same performance or a different course of action in the future because this cycle could reoccur. What happened in this case, in my humble opinion, Your Honor, I think the evidence bears out, was a little bit different because what happened was they would say, based on that, they were placing them in fear, saying that they should do something that put them at a complete financial disadvantage, specifically being that they would have to invest in one case by selling the coins back, in other cases by spending more money on the coins. They would have to invest in something that wasn't going to be as advantageous out of the fear that something would happen, or that based on past performance, the increase was going to be significant and that they would be financially justified in doing so, Judge Thomas. And that's the distinction that I'm trying to draw between those. If I did it inartfully, I do apologize to the panel. Well, will you move to breach of contract for a minute? What provision of the contract was breached? The contract, Your Honor, was breached because they were – that they simply did not get. They did not get something that if – I'm going to – and I'd like to take my – Can you be specific about what provision of the contract was breached? Well, it was more so – and I guess this kind of ties into warranty and also, Your Honor, why I focused on the fraud – was because they were in a situation where they had been bound to purchase a certain product with an understanding that it had certain value or characteristics, Your Honor. And, in fact, it did not. It wasn't that – and I want to be very, very clear on this. It seems like you're focusing on the representations that led to the contract. Absolutely. And so what's the breach of the contract? The – and it wasn't that they said here is one particular coin that you're going to get this from 1938 and it's actually from 1954. It's not that. It was that – and if I may, Your Honor, just to describe it a little bit, in the evidence in the Mann matter, when Tanya Mann had actually gone back and she had looked at the values of these different things that she was getting and they realized all of a sudden, these things don't appear to have the value that we were told they did. They went back to a gentleman whose name was Richard Cromwell, and I want to be very specific. We've got two different matters going on here. One is Selyev, one is Mann. One involves a gentleman named Mr. Cromwell, and one involves a gentleman named Mr. Spor. And in both situations, both these individuals were looked to by, respectively, Tanya and Philip Mann and Sergei Selyev, who has the companion matter, and they both were told as to what the skyrocketing value was going to be. They were both told as to the characteristics and the values these things were going to have. And so – Was that part of the contract? I'm sorry? Was that part of the contract? I certainly think it was inherent within the agreement between them, Your Honor. What was the warranty? They are the exact same thing. It's literally tied into you thinking you're going to get a product of a certain value, and then, such as, again, in the Tanya Mann matter, finding out that it's not of that value. Would you agree that there was no express warranty in this case? I certainly think that it would certainly be more of an, I guess you could say, an implicit warranty situation, Your Honor. Are your answers yes? I would agree with that. I'm trying to – and please forgive me. I'm trying to keep the causes of action distinct, and I'm also trying to draw the distinction between the Mann case and the Selyev case. May I respond to something else, though, Your Honor? There has been, in regard to – I want to bring out just a few bits of information. They had brought a – you'll have to apologize. I do have it marked. I wanted to get to – it's not lost on me that they brought a motion for dismissal, and they brought a motion for sanctions. The dismissal has been resolved already by the court, and I wanted to bring up some case law on that because I didn't want to get to the end and then not have drawn upon that. In the Nagel v. Allspach case, it talks about preserving cases with the court that have merit, and I think it talks about, in the Hamblin case versus the County of Los Angeles from 1986 and the Ninth Circuit, talking about matters where there is no affidavits, no depositions, and, frankly, there is no evidence to show how someone was wronged or no evidence to show how someone suffered financially because of representations that they had relied upon. And I want to be – I want to be very clear that if you look, if the court would look at both the representations and the affidavits talked about by Mr. Cromwell and if the court looked about the representations and the affidavits by Mr. Spohr, that will be – and I'm not talking about the people who wrote them. Those were the appellants. But in the actual individuals who were representing those entities, Your Honor, Mr. Spohr and Mr. Cromwell, it was the same exact pattern of getting someone to make a purchase and then maneuvering them into something that was less advantageous to them. And I think that's very telling in this case, and, frankly, it shows the pattern that we're talking about. So, frankly, I see that I'm down to about two and a half minutes. Do you want to reserve? If the court would allow me. Yeah, sure. Do I need to keep track of it? No. Okay. Thank you, Your Honor. It'll be placed back on there when you get back up to the floor. I'm sorry, Your Honor. It'll be – the time will be put back on for you. Understood. If it pleases the Court, I am Craig Martin, appearing for the defendant, Swiss America. You know, lawyers don't like to seek sanctions against another lawyer. We worry about – it may be us next time – we worry about maybe we'll reduce the standard and make it easier to get sanctions. But, Your Honors, if there was ever a case that calls for sanctions, the conduct in the briefing, the conduct today justifies it. In the normal case, I would come before Your Honor and talk about the elements of the appeal. We'd talk about the law and the facts. But there's nothing to say because there's no appeal here. He filed an appeals brief, but I have yet to hear what the points are that – where the trial – where the district court made error. It comes down to the very basic questions you asked, Your Honor. What was the representation? I have to tell you how frustrating it is as a trial lawyer and an appellate lawyer when the complaint doesn't tell me what the representations were. I take the depositions of the plaintiffs and they don't know. I look in the summary judgment and say, well, everything that says is not actionable and I don't get back even a statement of facts. And then we get an appeals brief where we don't know what the representations are. And now today Your Honor asks, what are the representations? I have yet to hear them. I have yet to hear where they are, where in the record they are, or how I can deal with them about whether they're opinions, whether they're about future facts, or all the other things that make representations not actionable. And the frustration is even today what I heard was something about historical basis. Well, that was never in the record below, Your Honor. To my knowledge, there's never been a claim that there's some false statement about some history that was made. For example, it is true that Swiss America talked about in its literature the gold confiscation that occurred in 1933. Well, it did happen. And whether that means it might happen again is for individuals to determine. But there is no false representation ever made or made by Swiss America. And for it to now have to defend itself in an appeal where we don't know what's being appealed is more than a frustration. Your Honor, the theme of what you've got here with this lawyer is to ignore things. And not just to ignore out of, for want of a better word, stupidity or lack of knowledge. This kind of ignorance is a dangerous ignorance. It's reckless. Because what you've got is the number of times this man has been told what's going on, and yet he still does the same thing, including when he appeared before you today, Your Honor. One particularly significant example is you read the briefing in the first case, the Mann case. He files a brief that never once cited to the district court's decision, doesn't cite to the record, but cut and paste his summary judgment in the proceedings below. He did that. That was pretty bad, very bad. And so what do we do? We file a motion for sanctions, a motion to dismiss, and a response. Six or five months later, he files another brief, the brief in the second case, and does the exact same thing. After being told at least nine rules that he violated before this court, he ignored them. After being told he violated basic principles, cite in the record and tell us what the representation is, he ignored it. And I could go on, Your Honor, but the point is that our client, Swiss America, deserves better. It is a reputable company. It has been business for many, many years. It has 50,000 clients. It's never been sued except for by that fellow in his law firm because they put out an ad saying, have you been defrauded by Swiss America? Call us. And they filed three suits on the same day. I know a lot of that doesn't have to do with your sanctions. It is in the record, though. And so what do we do as counsel representing a company that did absolutely nothing wrong, does valid business practices, sells a real product for a real price, agreed on? Well, we come to your court and ask for the sanctions that need to be made here. We ask that you send a message to this counsel that this isn't conduct that should be allowed. We've given you the legal basis, whether it's under Rule 38 or 1927. This case deserves sanctions. And I don't think there's more I need to say, Your Honor. The briefing says it for me. And so unless there's questions, I won't waste more of Your Honor's time. Thank you. Your Honor, I don't have a lot left to say, but if I may use the remainder of my time. First, from the very beginning on this, and forgive me, I was not the attorney on this at the outset on it, and I understand that there have been other cases filed. But I will say this, and I know it's a matter of just me speaking to the court candidly, but I understand. I did defense work a long time, and I understand where the frustrations are. There was no intention here to cause anybody any problem. We have actual in the orders. And I wanted to go ahead and bring this up, because I noticed the first thing that Mr. Martin said was, I don't recall ever seeing anything that actually said that we're fighting here about any historical precedent or anything like that. I want to be very clear. If the court would look in the record at page 30, and I believe that's going to be part of an actual statement of facts or the actual defense, the offering from them, I want to say it's on 30, and I had down lines 24 through 26, Your Honor, and it was in regard to that 1933 executive order. I'm not trying to rehash the stuff that Judge Thomas, that we got into before about the discussion about misrepresentations. I was just saying there was absolutely a, in this case, there was absolutely references made to that historical or the past years of what they were getting these people to look at to use it as a fear tactic to change how they did things at the present day. I also want to bring something else up. They were very specific, and I'm trying not to go over my time, Your Honor. They were very specific about whenever you have the appeal and bringing up the issues that would be looked at on appeal, we had been specific from the beginning about it's a de novo standard. You look at it fresh. There had been case law. I know the Berrientos case, I think the Lawrence versus Department of Interior case, all those matters that's said, it's a de novo standard review, but then when you go back and you look at the deeper issues, such as when they were claiming the sham affidavit and things like that, the law is clear, and I'll rely on the briefing on this, that there's a presumption against those kinds of things unless there's just some inherent unfairness. For example, I know that in the case involving school district, I believe it was school district number 1J, which was a case that was cited from the Ninth Circuit in 1993, I'll just say this real quickly, that had said that that type of the sham affidavit application should be applied with great caution. In this case, I'll leave it with this, they had a statement of facts that had said specifically here's what happened. I think the key from the testimony from the people in their depots and in their affidavits was why it happened. Those are the exact things that, and I sent a letter of apology about the statement of facts, those would have been the exact same things that would have been included in the contested statement of facts. Nothing more, there was nothing out there to create prejudice or surprise. But those. Thank you, counsel. Thank you, Your Honor. You've gone over your time, so thank you. Oh, I'm over. Sorry. The case has started to be submitted for decision, and we'll proceed with argument in the case of United States v. Thrift.
judges: Fernandez, Thomas, Ezra